Filed 10/6/21  In re A.L. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | C092994 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. 20JVSQ3178201) |
| Plaintiff and Respondent, | |
| v. | |
| Y.L., | |
| Defendant and Appellant. | |

Y.L., the presumed father of minor A.L., who was aged three or four at all relevant times, challenges the jurisdictional and dispositional orders of the juvenile court.  Father argues substantial evidence does not support the jurisdictional finding that the minor was

1

a child described in Welfare and Institution Code section 300, subdivision (d)[1] and conditionally challenges the minor's subsequent removal.

As we will explain, although the evidence was not overwhelming at the time of the contested hearing, it was sufficient to support the juvenile court's exercise of jurisdiction over the minor by a preponderance of the evidence. We decline to reach father's conditional challenge to removal. We affirm the orders of the juvenile court.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 15, 2020, the Shasta County Health and Human Services Agency (Agency) filed a petition alleging the minor was a child described within section 300, subdivision (d), meaning sexually abused or at risk therefor. As relevant here, the petition alleged that: father was arrested on June 11, 2020 "for sex related crimes involving juvenile victims" (alleged to have occurred in 2019); the minor's parents had accused each other of allowing her "to be sexually abused while in the other parent's care"; and that she had reported being "touched in her vaginal area."

According to the detention report, mother contacted the Agency on June 10, 2020, after father accused mother of allowing her boyfriend to sexually abuse the minor. Following a visit with mother, the minor had complained to father that she was "hurting down there," according to father. Mother denied that the minor had been alone with mother's boyfriend and stated that the minor told her instead that *father* touches her " 'down there' " and that " '[h]e uses his finger.' "

At an interview on June 11, 2020, father explained that the minor had returned from a visit at her mother's "and said that she was hurting down there"; when father investigated he found that the inside of her vaginal area was red with a white substance.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

Section 300, subdivision (d) describes a child who has been sexually abused or is at risk of sexual abuse.

According to father, he asked her "if anybody is touching her down there" and responded her "other dad" (apparently referencing mother's boyfriend) and mother. Father complained to mother and called his attorney but did not report this information despite being encouraged to do so. He was subsequently arrested on an unrelated case: communicating with and arranging to meet a minor with the intent to have sex (Pen. Code, §§ 288.3, 288.4) during a sting operation that had occurred in October 2019. The minor was placed in protective custody; a family court order precluded mother from taking custody of the minor.

After establishing among other things that the minor referred to her vaginal area as her " 'titi,' " the social worker asked her if anyone had touched her anywhere that made her "mad or sad or something different," to which the minor replied, " 'my titi.' " When asked who had touched her there, she replied " 'just a black guy,' " whom she further described without prompting as her "mommy's boyfriend." When the social worker tried to ask the minor whether the contact had been over her underwear, the minor interrupted stating: " 'no underwear, my titi.' " When asked whether the contact had been on the outside, she answered: " 'no not outside the titi inside the titi.' " The social worker thought the minor may have been coached by father, who repeatedly referred to the boyfriend as a "black guy," and she suggested a forensic interview; ultimately, none was done. Nor did anyone at the Agency ever contact the boyfriend or even confirm he was African-American; indeed, mother reported he was not.

On June 15, 2020, mother reported she had taken the minor to the health center and a doctor told her that "everything looked normal." Notes from the doctor's visit disclose that the minor may have had vaginitis brought on by poor wiping, which is common in children of her age.

Mother reported that father had raped her in the past and had a history of raping minor girls. Investigation revealed mother's sister had accused father of inserting his fingers in her vagina while she slept when she was 13 years old circa 2016, but later

3

recanted that complaint under apparent pressure from the parents. After mother ended her relationship with father, mother admitted that father had indeed sexually abused the sister.

After father's original arrest in October 2019, the minor had been placed in a temporary guardianship with father's brother, but was returned to father in February 2020. It was later revealed that the probate court terminated the guardianship primarily because the court was under the impression that father would not be criminally charged, but by the time of the jurisdiction and disposition hearing father had indeed been charged and the case was ongoing. The preliminary hearing was set for December 3, 2020. If convicted, father would be required to register pursuant to Penal Code section 290. Later included with the disposition report was a police report detailing father's arrest for, among other things, communicating with a minor whom he believed to be 15 years old to arrange for sex.

On June 15, 2020, father spoke with a social worker and denied sexually abusing the minor. On June 16, the juvenile court detained the minor, ordered separate supervised visitation with mother and father, and set the combined jurisdictional and dispositional hearing for August 4, 2020.

The Agency's July 23, 2020 disposition report recommended the minor be declared a dependent and continued in foster care, with reunification services to both parents. This report noted that mother was with father for approximately four years and disclosed domestic violence with him, including physical abuse, rape, and being forced to have sexual relations with another man in front of father. A document detailing her description of this abuse to authorities in 2019 was included with the report.

Father said he was in a relationship with mother for approximately three years, that mother was physically abusive towards him and the minor, and that as a result, he had full custody of the minor and a restraining order against mother.

4

As relevant here, the foster parent reported that the minor often had difficulty sleeping and called for a foster parent to lay with her. She had taken her clothes off in front of others, and had run around without her underwear or bottoms. On the evening of July 10, 2020, the foster mother heard her screaming and crying; upon checking on her, the foster mother saw her in her play tent without bottoms or underwear with the head of a Barbie "pressed against her bare vagina." A review of the record reveals that this incident occurred on the same day the minor had a visit with father; near the end of a visit she sang father a song that involved going to sleep in her bed, but waking up in "daddy's bed." This was witnessed by the social worker, who reported that father's eyes "went very wide" and he said, " 'You weren't in my bed' " to which the minor responded, " 'not last night silly.' "

When the minor was asked by the visiting social worker on July 13 about the discovery of her with her Barbie a few days before, the minor told the social worker that Barbie had died; when pressed, she refused to make eye contact, softly denied that Barbie had touched her titi, refused to talk anymore, and left the room. Later that day, when again asked if she had been naked in her tent with Barbie, she replied, " 'No, daddy was not here.' " A review of delivered services log entry generated for the July 13 visit, also in evidence, disclosed that same day the minor told the visiting social worker that her daddy (father) did not love her anymore and that: " 'I just want to lay in bed with my other daddy, but I can't.' " Also at this visit, the minor avoided answering whether anyone slept with her in her bed.

At a different point during her July 13 conversation with the social worker, the minor offered that she had been poked with a needle and it hurt. She drew a picture of the "needle" with help from the social worker; the drawing was mildly phallic.[2] The

[2] The drawing is in the record and we note that it consists of two bulbous circular portions connected to a sideways narrow "V" shape that comes to a point at the end.

service log reflects that the minor told the social worker that the "needle" poked her "many times" and she spread her legs, making an explicit gesture of being poked multiple times in the vaginal area with her index finger to demonstrate and saying, "like this." She denied knowing who had poked her.

After the hearing was continued, an addendum was filed on September 22; it reported that near the end of a September 10, 2020, visit the minor spontaneously told father: " 'You cannot poke me in the titi with a needle again, okay?' " Father asked what she had said, she responded: " 'I don't want you to poke me in my titi with the needle again like you did before.' " Father professed confusion and told her not to lie about things that never happened; she then interjected: " 'You know, the needle in my titi.' " Father told the social worker "that he uses needles for his insulin shots, but that was it."

At the contested jurisdiction/disposition hearing held on September 24, 2020, the testifying social workers confirmed in relevant part the details described *ante*. As relevant here, father also elicited evidence that the minor's 17-year-old half-brother (who lived with father) denied sexual abuse, felt safe in father's care, and stated he would have reported any suspicion that father or anyone else had sexually abused the minor. The social workers' interview logs were admitted into evidence by stipulation and father's attorney asked the court to consider these contents "in lieu of testimony."

The social worker testified that the minor's therapist had seen no sexualized behavior, but on September 29, 2020, the foster mother told the social worker that she had discovered the minor laying on top of another child under a play slide; both children were clothed. The minor told the foster parent they were "playing family." On October 19, the foster parent again saw the minor acting furtively and found her in her room on top of another child, kissing her. The foster parent separated the children and spoke with the minor about her actions; the minor said: "this is how they play." The foster parent asked whether this had happened to her in the past, and the minor told her yes, and that she would kiss father on the mouth and "belly." But when she said "belly" the foster

6

mother confirmed with her that she was instead pointing to, in the words of the social worker, her "private area."

The parties stipulated that father had denied inappropriate touching to a different social worker and had explained his October 2019 arrest as an attempt to catch mother's sister in the act of soliciting prostitution.

After hearing the parties' argument, wherein minor's counsel and the Agency urged the taking of jurisdiction and removal of the minor from her parents, and parents' counsel argued against both, the juvenile court took jurisdiction. In ruling, the court highlighted the minor's direction to father in the presence of the social worker not to poke her titi with the needle anymore, and noted the minor had no motive to fabricate that statement given her close bond to father and desire to return home. Further, in addition to the parents' allegations against each other, the court considered the minor's conduct and statements, including her sexualized behavior. The court adopted the Agency's proposed jurisdictional findings and orders related to the amended petition. It also adopted the proposed dispositional findings, with amendments not relevant here. As requested, the court set the matter for early review in 90 days, which was January 20, 2021.

Father timely appealed. This case was fully briefed on June 24, 2021. No party sought to augment the record on appeal.

## DISCUSSION

Father argues substantial evidence did not support the juvenile court's finding that the minor was described by section 300, subdivision (d) as insufficient evidence supported the conclusion that she was sexually abused or at risk for such abuse. He argues that there was no physical evidence of abuse and no witnesses, and that the available evidence that consisted of the minor's statements, drawing, and behaviors as well as father's history and current charge, was inadequate. Although we agree that more

7

investigation could have and should have been done by the Agency, the evidence here is sufficient to support jurisdiction over the minor, as we next explain.[3]

I

*Standard of Review and Applicable Law*

" 'Proof by a preponderance of evidence must be adduced to support a finding that the minor is a person described by Section 300' who may be adjudged a dependent of the court." (*In re I.C.* (2018) 4 Cal.5th 869, 876.) We review this finding for substantial evidence. (*Id.* at p. 892.) " ' "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Relevant to father's arguments on appeal, section 355, subdivision (b) "provides that 'a social study . . . and hearsay evidence contained in it, is admissible and constitutes competent evidence on which a finding of jurisdiction pursuant to section 300 may be based, to the extent allowed by subdivisions (c) and (d).' [¶] Section 355, subdivision (c) makes clear that only certain types of hearsay are sufficient to support a jurisdictional finding. Subdivision (c)(1) provides that '[i]f any party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in a social study, the specific hearsay evidence shall not be sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based, unless the petitioner establishes one or more of the following exceptions[.]' Most

---

[3] Because we reach this conclusion without consideration of the possible involvement of mother's boyfriend, we need not and do not address father's alternate and conditional claim, that should we "conclude there was substantial evidence to support the juvenile court's finding under section 300, subdivision (d) based upon evidence pertaining to mother's boyfriend, the removal order as to [father] should be reversed."

8

pertinent to our discussion is subdivision (c)(1)(B): 'The hearsay declarant is a minor under the age of 12 years who is the subject of the jurisdictional hearing. However, the hearsay statement of a minor under the age of 12 years shall not be admissible if the objecting party establishes that the statement is unreliable because it was the product of fraud, deceit, or undue influence.' (§ 355, subd. (c)(1), as added by Stats. 1996, ch. 36, § 1; see also Cal. Rules of Court, rule 1450(d).)" (*In re Lucero L.* (2000) 22 Cal.4th 1227, 1242.)

A juvenile court errs if it finds jurisdiction premised "solely [upon] hearsay statements of a truth-incompetent child—that is, a child who may not testify because she is too young to separate truth from falsehood—unless the child's statements bear 'special indicia of reliability.' " (*In re I.C., supra*, 4 Cal.5th at p. 875.) While such evidence would still be *admissible*, it would not in and of itself be *substantial*, and its exclusive use to sustain jurisdiction would deprive a contesting parent of due process. (*In re Lucero L., supra,* 22 Cal.4th at pp. 1244-1246, italics added.)

II

*Bases for Jurisdiction and Analysis of Sufficiency*

The parties appear to assume the minor here was truth incompetent and we agree, as she was three and four years old when she made the statements at issue, and the record does not reveal any evaluation or determination as to her truthfulness. Thus, her statements *alone* could not establish jurisdiction without some "special indicia of reliability" as required by *In re I.C., supra*, 4 Cal.5th 869. Although the Agency argues that the circumstances of this case justify a finding of a special indicia of reliability, because the minor's statements were not the *sole* basis for the juvenile court's exercise of jurisdiction, as even father's arguments implicitly concede, we need not address this issue.

Because the juvenile court and this court do not rely solely on A.L.'s hearsay statements to support the jurisdictional finding, we are not assessing "whether the record

9

as a whole provides substantial evidence to support a determination that the child's statements bear special indicia of reliability." (*In re I.C.*, *supra*, 4 Cal.5th at p. 875.) We do note, however, that certain statements by A.L. were made spontaneously and under circumstances consistent with caselaw determining reliability of a child hearsay declarant, as we set forth in greater detail below. (See *In re Lucero L., supra*, 22 Cal.4th at p. 1239.) We discuss first the minor's statements and next the remainder of the evidence; we conclude when considered in its totality the evidence is sufficient for an appropriate exercise of jurisdiction over this minor.

A. *The Minor's Statements*

We have set forth the statements at issue in detail *ante* and briefly summarize them here: at the inception of the case, the parents implicated one another when confronted with the possibility that the minor was at risk of sexual abuse and each said the minor had accused the other of inappropriate touching. The minor then reported to the social worker that she was touched inside her underwear and genital area; although she mentioned the boyfriend, the Agency suspected she was coached but did not follow up on this angle. The Agency did, however, continue to pay attention to the statements made by the minor about and around father, and some of those statements were quite concerning. As we have discussed, the minor spontaneously told her father in the presence of the social worker that she did not want him to touch her "titi" with the "needle" anymore and then doubled down, repeating her instruction and also telling him "you know" when he expressed confusion. As noted by the juvenile court, this statement was spontaneous and made without motive to fabricate. It was also made near the end of an otherwise normal family visit, thus supporting its reliability. (*In re Lucero L., supra*, 22 Cal.4th at p. 1239.)

Also near the end of a different family visit, the minor had sung a song to father about sleeping in the same bed with him and suggested that although "not last night," there were times when she did. When not with him, she talked about him even when not

10

invited to do so, including volunteering that she kissed his mouth and "belly," and then insinuating that "belly" was actually a reference to the genital area. She discussed being repeatedly "poked" with a "needle" that hurt her while gesturing between her legs and drawing a "needle" that did not look like a conventional needle. When asked whether she had been naked in her tent with Barbie, she volunteered to the social worker, " 'No, daddy was not here.' "

We agree that due to the minor's young age and the lack of findings required by *In re I.C.*, *supra*, 4 Cal.5th 869, the minor's many statements cannot be the sole basis for jurisdiction. However, the statements are admissible evidence of sexual abuse and risk to the minor of such abuse. Father's arguments as to the statements' lack of probative value go to the statements' weight rather than their admissibility.

B. *Accompanying Behaviors*

Observations of the minor's actions and behaviors are not hearsay. As we have described in detail *ante*, the minor sung a song about being in bed with her father during a visit with him; later that same day she was seen pressing a Barbie doll against her bare vagina while vocalizing. She was twice caught furtively kissing and laying on top of other children, and explicitly spreading her legs and repeatedly gesturing toward her genitals with her finger to demonstrate her report of being poked. She also gestured toward her genitals when she discussed kissing her father. Although not dispositive, this evidence is probative.

This is not a situation where external sources can account for all of the minor's sexualized behaviors, including explicit gestures demonstrating advanced sexual knowledge. (Cf. *In re I.C., supra*, 4 Cal.5th at p. 895 [prior molestation by neighbor undermined whether sexual gesturing could support an abuse allegation against father].) For example, father points to a reference by the minor to her parents kissing in bed and posits that this observation resulted in her problematic "family" play with other children. He adds that the minor brought up her parents' kissing in response to questions about the

11

Barbie incident, but the record belies that assertion. The two conversations were separate; at the latter conversation, the subject was visitation and the minor offered that her parents " 'don't live together and don't kiss anymore.' " The social worker asked the minor to explain, and she stated, " 'I saw them in bed kissing and I was just standing there' "; she did not recall when this was. Even accepting that the minor's repeated sex play with a similarly aged child should be attributed to this observation, it does not explain the minor spreading her legs and making explicit gestures of being poked in her vaginal area with her index finger multiple times, as well as gesturing toward her genitals when discussing kissing father's belly. Nor does it explain the Barbie incident, or the drawing of the "needle."

While the minor denied knowing who had poked her at that time she made the explicit gestures, she later spontaneously cautioned father several times not to poke her anymore, as we have discussed. Although father suggests that the minor confused the memory of watching him inject his abdomen with insulin, other than father's assertion to the social worker in the moments after the minor's statements to him, we see no evidence that such injections took place and were witnessed by the minor. Further, even giving full credit to this interpretation, it is inconsistent with the minor's explicit and persistent gesturing toward her genitals with her finger, for which there is no benign explanation. While father argues we cannot credit this statement regarding penetration without physical evidence thereof, such corroboration, while helpful, is not a prerequisite to admissibility. (§ 355, subds. (a), (c)(1)(B); *In re Lucero L., supra*, 22 Cal.4th at pp. 1248-1249 [corroboration, while lending additional credibility to a child's hearsay statement, was not required to consider that statement].)

Although father argues that certain of the minor's sexual behaviors such as kissing and playing "family" with other children were observed after several months in foster care and the minor may have learned these behaviors elsewhere, there is no evidence to support this theory. Further, as we have explained, the minor was suggesting with both

12

her statements and behaviors that she was being touched inappropriately by adults from the beginning of this case.

Finally, father points out that no expert actually identified the minor's behavior as sexualized; indeed, he argues the only expert to give evidence was the minor's therapist, who indicated there was no evidence of "problematic sexualized behaviors." First, we note that the minor's therapist neither testified nor provided a report to the court. All information in the record pertaining to any observations by the therapist came through the social worker. In fact, the record does not even contain information to establish the therapist would be qualified to express an opinion in this area, as the social worker did not know whether the minor was receiving sexual abuse counseling and did not know whether the therapist specialized in sexual abuse. Rather, the minor's therapy was focused on curbing her inability to sleep and establishing boundaries because she wanted to hug and kiss strangers. Further, father presents no authority for his argument that expert testimony on the minor's sexualization was somehow required. (Cf. *In re I.J., supra*, 56 Cal.4th at pp. 778-779 [no scientific evidence required regarding substantiality of risk that parent who abused daughter will also abuse son; "the juvenile court is supposed to use its best judgment to determine whether or not the particular substantial risk exists"].)

C. *Father's History and Pending Charges*

There was no dispute but that father had been arrested for a sex-related crime involving a juvenile victim and had a pending preliminary hearing date at the time of the jurisdiction hearing. It was alleged that he had repeatedly asked her to send naked pictures of herself and had arrived at the prearranged location with the exact amount of money agreed to for the anticipated sexual encounter after having been told numerous times by the decoy in the sting operation that she was 15 years old.

Father minimizes these charges, as he had not been convicted at the time jurisdiction was taken, but we note that *had* he been convicted at the time and required to

13

register as a Penal Code section 290 registrant, section 355.1, subdivision (d) would have provided a rebuttable presumption in favor of jurisdiction. (§ 355.1, subd. (d).) Further, even though he was not yet convicted, the fact of these pending charges was at least minimally relevant to a dependency adjudication. (See *In re I.J., supra*, 56 Cal.4th at pp. 770, 779 [current allegations of father's sexual abuse of his daughter was also relevant to the risk posed to his son; "section 355.1 is relevant because it evinces a legislative intent that sexual abuse of someone else, without more, at least supports a dependency finding"].)

Further, here there were also allegations that father had sexually abused mother's then 13-year-old sister in 2016 by placing his finger inside her vagina while she slept. While the child welfare case concerning this allegation was closed as "inconclusive" after the victim recanted following probable pressure from father and mother (who was then pregnant with the minor), it does show a concerning pattern of accusations of inappropriate sexual conduct with underage females. This contributes to risk assessment. (See, inter alia, *In re I.J., supra*, 56 Cal.4th at p. 778 [in order to determine the substantiality of the risk, a court must consider not only the likelihood that it would occur, but the magnitude of the harm that would be inflicted]; *In re S.R.* (2020) 48 Cal.App.5th 204, 206, 212-213 [father's possession of child pornography as supporting substantial risk that he would sexually abuse his 10-year-old daughter requiring her removal despite expert testimony that he was a "fantasy" offender who did not pose such a risk]; *Los Angeles Dept. of Children & Family Services v. Superior Court* (2013) 222 Cal.App.4th 149, 164 [even accepting that father's risk of harming son was between 4.8 to 17.9 percent, harm that would be inflicted necessitated the court's exercise of jurisdiction].)

D. *Conclusion*

While the minor's concerning statements alone cannot constitute substantial evidence to justify a finding of sexual abuse or a risk of sexual abuse, the statements may

14

be properly considered together with other evidence in support of such finding.  When considered together with the minor's various behaviors, the parents' dueling allegations of sexual abuse and the circumstances surrounding those allegations, as well as the pending and former allegations against father of inappropriate sexual contact and conduct with underage females, there is substantial evidence that the minor is a child described by section 300, subdivision (d).

## DISPOSITION

The orders of the juvenile court are affirmed.


_____/s/_____
Duarte, J.



We concur:




_____/s/_____
Raye, P. J.




_____/s/_____
Robie, J.




15